United States District Court
Southern District of Texas
**ENTERED**
January 25, 2019
David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **JESUS ROBERTO VILLARREAL,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:18-145** |
| | § | |
| **LORIE DAVIS,** | § | |
| **Respondent.** | § | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On September 10, 2018, Petitioner Jesus Roberto Villarreal filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Dkt. No. 1.

On January 17, 2019, Respondent Lorie Davis filed a motion for summary judgment. Dkt. No. 16. Davis asserts that Villarreal's claims are untimely filed.

After reviewing the record and the relevant case law, the Court recommends that Davis's motion for summary judgment be granted. Villarreal's claims are untimely filed and cannot be saved through equitable tolling. Moreover, even if his claims were timely, all except one are unexhausted and the exhausted claim would not entitle Villarreal to the requested relief.

## I. Background

### A. Factual Background

On direct appeal, the Thirteenth District Court of Appeals of Texas made a number of specific factual findings. Villarreal v. State, 2010 WL 746699 (Tex. App. 2010). As provided by law, the court sets forth and adopts those findings.[1] Thus, all of the facts, unless otherwise indicated, are quoted from the state Court of Appeals decision, changing only the

---

[1] Any factual findings made by the state court are "presumed to be correct," unless the petitioner can show "by clear and convincing evidence" that they were incorrect. Norris v. Davis, 826 F.3d 821, 827 (5th Cir. 2016), cert. denied, 137 S. Ct. 1203, 197 L. Ed. 2d 250 (2017) (citing 28 U.S.C. § 2254(e)(1)). Villarreal has raised no such challenge. Indeed, Villarreal has not challenged any specific factual findings as found by the state court. Accordingly, the Court adopts the factual findings of the state court.

formatting.

In December 2005, a robbery occurred at each of the following locations in Brownsville, Texas: Sally's Beauty Supply, Ultimo Taco, and Bed Bath & Beyond. The first robbery was on December 5, 2005, at Sally's Beauty Supply. Heidi Rosenbaum, who was working as a cashier at Sally's Beauty Supply, gave money to a man who was wearing a black hoody, a hat, black pants, and something covering his nose. The man told her "to give him the money" and showed her a gun that he had under his jacket. Rosenbaum testified that all she could see was the man's eyes, which were unique in that they were "slanted down." A co-worker also gave money to this man. The money taken from Sally's Beauty Supply totaled about $540. At trial, Rosenbaum identified Villarreal as the person who committed the robbery. She also testified that, after reviewing approximately thirty photographs, she had identified Villarreal in a photo lineup. The photo lineup was admitted, without objection, as State's Exhibit 29.

The next robbery occurred on December 10, 2005, at Ultimo Taco. Armando Curiel, the manager of the restaurant, testified that he saw a car pull into the parking lot and park facing an exit. Two masked men, one taller and the other much shorter, rapidly entered the restaurant shooting their firearms-one had a pistol, the other a rifle. Alicia Curiel, Armando's wife, was working as a cashier at the restaurant. The men demanded money, and when Alicia could not open the money drawer, they took the whole drawer. Armando attempted to pursue the robbers who were driving a gold car, but he lost them. At trial, Armando described the car as a gold Stratus. Armando testified that he was unable to identify the men who entered the restaurant and robbed him. Alicia's testimony was consistent with that of her husband. She, too, was unable to identify the men who entered the restaurant that night, except that one was tall and the other short and that the short one had black eyebrows.

The last robbery took place at Bed Bath & Beyond on December 18, 2005. Adelina Rios was working as a cashier when two men – one larger or heavier and one smaller – entered the store and discharged their firearms. The smaller man, whose face was covered by a mesh cloth like pantyhose, ordered her to give them money from the cash register. At

2

trial, Rios described this man's eyes as follows: "Bushy eyebrows, dark brown eyes; and on his right eye, it looked kind of like a lazy eye, droopiness." After providing the description of his eyes, Rios testified that she saw the same set of eyes in the courtroom and identified Villarreal as one of the persons who robbed Bed Bath & Beyond that day. Rios also identified a piece of cloth-a mesh material that had a black lining-that looked similar to what the robber was wearing over his nose to conceal his identity. This item was admitted as State's Exhibit 39.

Dean Davila testified that he and Christina Villarreal were customers in Bed Bath & Beyond when he saw two men wearing dark clothes and masks and carrying weapons enter the store. Davila and Christina attempted to slowly walk off to the side of a counter. As they did so, one of the men pointed a gun at them and asked where they thought they were going. Davila told him that he and Christina were "going to the floor" because "we don't want any trouble." Davila was unable to identify Villarreal as one of the two persons who committed the offense. Christina's testimony was similar to Davila's testimony. She, too, was unable to identify either of the two individuals who committed the offenses at Bed Bath & Beyond. Villarreal was arrested at the home of an acquaintance, Teresa Medders who testified as follows:

– Medders knew "Jesse" or Jesus Villarreal, and she also knew Benito Gonzalez.

– Villarreal stayed with Medders "off and on" at her apartment during December 2005.

– Villarreal left his clothing at her apartment sometimes.

– Villarreal and Gonzalez were friends.

– Medders saw Villarreal at her apartment with a small handgun. She told him that she did not want the gun there.

– Medders also saw Gonzalez with a gun at her apartment.

– On one occasion, Villarreal and Gonzalez came to Medders's apartment wearing dark clothes. They went into the bathroom where Medders overheard them talking about "Sally's" and "not going to the same place twice." When they came out of the bathroom,

Villarreal gave her around $400 cash to help pay the rent. When she asked about the money, Villarreal told her not to worry about it.

– One week later, Villarreal and Gonzalez came to her apartment again, and while they were in the bathroom, she heard them complaining that they did not have enough money or did not get enough money.

– Gonzalez, who borrowed Medders's mother's car, was involved in an accident with the car and a school bus and was arrested.

– After Villarreal found out that Gonzalez had been arrested, he was upset and furious. Villarreal told Medders that he wanted to leave town.

– Medders identified State's Exhibit 39 as her "[t]high high, torn thigh high, or cut off, cut, ripped, and torn" pantyhose. The piece of clothing was found in her apartment.

– After being shown a portion of the Bed Bath & Beyond robbery videotape, Medders recognized the hats worn by the men. She also testified that the jacket with a stripe on it looked familiar. The hat with a gray stripe had been a Christmas gift to her from her father. The hats were found in her apartment.

– Medders had no criminal charges lodged against her.

Gonzalez testified at trial that he was "doing time" for, among other things, the offenses at issue in this case and had entered into an agreement with the State to testify at Villarreal's trial. He testified that Villarreal, whom Gonzalez referred to as "Jesse," went into Sally's Beauty Supply on December 3, 2005. He was not sure if "Jesse" was in the store for longer than two to five minutes. Gonzalez stated that, because he was on drugs, he could not "remember real good" who was with him at the Ultimo Taco restaurant on December 10, 2005, but both went into the restaurant, "[s]tuck up the place," and drove off together. Gonzalez also testified that on December 18, 2005, "Jesse" was with him at Bed Bath & Beyond when he walked in, "shot up the place," and asked for money, which he thought he got. Gonzalez testified that he also identified Villarreal in a photo lineup as the other person he was with during the robberies and that he had written on the photo "This is the guy robber." In addition, on December 21, 2005, Gonzalez gave a voluntary statement to Officer

Chris Ortiz, a detective with the Brownsville Police Department. In his statement, Gonzalez implicated Villarreal in the robberies at Sally's Beauty Supply, Ultimate Taco, and Bed Bath & Beyond. Gonzalez's statement was admitted, without objection, as State's Exhibit 61.[2]

On April 3, 2008 – at the conclusion of the jury trial – Villarreal was found guilty of four counts of aggravated robbery, and two counts aggravated assault. Dkt. No. 17-24, pp. 1045-1053.[3]  Villarreal was found not guilty on two separate counts of aggravated robbery. Id.  On April 28, 2018, Villarreal was sentenced to 60 years of incarceration. Id, pp. 1057-58.

**B. Direct Appeal**

On direct appeal, Villarreal – via appointed counsel – raised five issues: (1) the State impermissibly commented on his post-arrest silence; (2) trial court erred by admitting impeachment testimony; (3) he was denied his right to counsel; (4) prosecutorial misconduct; and, (5) there was insufficient non-accomplice evidence. Villarreal v. State, 2010 WL 746699 (Tex. App. 2010).

On March 4, 2010, the Thirteenth District Court of Appeals issued an opinion, affirming Villarreal's conviction. Id.  The appellate court specifically rejected each and every claim for relief. Id.

On April 1, 2010, the Thirteenth District Court of Appeals overruled Villarreal's motion for rehearing. Id.

Villarreal did not file a petition for discretionary review with the Texas Court of Criminal Appeals. Dkt. No. 1, p. 3.

---

[2]  The direct quotation of facts, taken from the Thirteenth District Court of Appeals, ends here.

[3] The page citations refers to the Bates-stamped number on the bottom right of the page of the identified docket number.

### C. State Habeas Proceedings

On April 28, 2015, Villarreal – proceeding <u>via</u> retained counsel – filed a <u>habeas</u> petition in the state court. Dkt. No. 17-24, p. 879-898.  In that petition, Villarreal raised 14 issues, which the Court restates as the following four issues: (1) applying laches in <u>habeas</u> proceedings is a suspension of the writ and a violation of due process; (2) he was denied his choice of counsel at trial; (3) counsel was ineffective for failing to object to the state introducing evidence of his post-arrest silence; (4) counsel was ineffective for failing to object to hearsay evidence. <u>Id</u>.

On August 5, 2015, the Texas Court of Criminal Appeals denied the petition without a written order. Dkt. No. 17-21, p. 873.  The denial indicated that the Court of Criminal Appeals rejected the petition on substantive grounds, rather than on procedural grounds. <u>Ex parte Torres</u>, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (<u>en banc</u>) (indicating that a "denial" signifies adjudication on the merits, while "dismissal" reflects a claim declined on grounds other than upon the merits).

On June 16, 2016, Villarreal – proceeding <u>pro se</u> – filed a second <u>habeas</u> petition in state court. Dkt. No. 17-26, p. 1066.  In that petition, Villarreal raised five issues for review, which the Court restates as the following four issues: (1) he was actually innocent of two counts of aggravated robbery, relating to the Ultimo Taco robberies; (2) the State violated his <u>Brady</u>[4] rights by failing to disclose Gonzalez's videotaped confessions to the defense; (3) the State knowingly used Gonzalez's perjured testimony at trial; (4) counsel was ineffective for failing to uncover exculpatory evidence. <u>Id</u>., pp. 1066-80.

On September 7, 2016, the Texas Court of Criminal Appeals dismissed Villarreal's petition as a subsequent application under TEX. CODE CRIM. PROC. Art. 11.07 §4(a)-(c). Dkt. No. 17-25, p. 1062.  The dismissal signified that the Appeals Court decided the petition on procedural, rather than substantive, grounds. <u>Ex parte Torres</u>, 943 S.W.2d at 472.

---

[4] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

### D. Procedural History

On September 10, 2018, Villarreal – proceeding <u>pro se</u> – filed a <u>habeas</u> petition, pursuant to 28 U.S.C. § 2254, in this Court. Dkt. No. 1.

In that petition, Villarreal raised four claims: (1) the State failed to turn over exculpatory and impeachment evidence in the form of Gonzalez's videotaped confessions; (2) denial of counsel of choice; (3) ineffective assistance of counsel; and (4) evidence was insufficient to sustain the convictions. Dkt. No. 1.

On January 17, 2019, Davis filed a motion for summary judgment. Dkt. No. 16. Davis argues that Villarreal's petition is untimely filed and cannot be saved by equitable tolling.

## II. Applicable Law

### A. Summary Judgment

Summary judgment pursuant to Rule 56(c) is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). All inferences are made and doubts are resolved in favor of the nonmoving party. <u>Dean v. City of Shreveport</u>, 438 F.3d 448, 454 (5th Cir. 2006). Hearsay is not competent summary judgment evidence. <u>Martin v. John W. Stone Oil Distributor, Inc.</u>, 819 F.2d 547, 549 (5th Cir. 1987).

A court may determine that no genuine issue of material fact exists, if it determines that no reasonable juror could find in favor of the nonmovant. <u>Mayberry v. Vought Aircraft</u>

Co., 55 F.3d 1086, 1089 (5th Cir. 1995).  The moving party, however, is not required to provide evidence negating the nonmovant's claims. Celotex Corp., 477 U.S. at 323. "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for entry of summary judgement, as set forth in Rule 56(c), is satisfied." Id.  Summary judgment is an appropriate vehicle through which to resolve a habeas petition – including challenges based upon procedural grounds – where the facts otherwise support such resolution. Goodrum v. Quarterman, 547 F.3d 249, 255 (5th Cir. 2008); O'Veal v. Davis, 664 F. App'x 355, 356 (5th Cir. 2016)

### B. Section 2254

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner convicted in a state court may challenge his conviction to the extent it violates "the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Accordingly, only violations of the United States Constitution or federal law are subject to review by this Court under § 2254.

In conducting such a review, a federal district court:

> may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the claim by the state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding."

Riddle v. Cockrell, 288 F.3d 713, 716 (5th Cir. 2002) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

"A decision is contrary to clearly established federal law under § 2254(d)(1) if the state court (1) 'arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law'; or (2) 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent' and reaches an opposite result.'" Simmons v. Epps, 654 F.3d 526, 534 (5th Cir. 2011) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)).

"The state court makes an unreasonable application of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts'; or (2) 'either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Simmons, at 534 (quoting Williams, at 407).

Additionally, the AEDPA requires that federal law be "clearly established" "as articulated by the Supreme Court." Woodfox v. Cain, 609 F.3d 774, 800 n. 14 (5th Cir. 2010). "[A] decision by . . . [the Fifth Circuit] . . . or one of our sister circuits, even if compelling and well-reasoned, cannot satisfy the clearly established federal law requirement under § 2254(d)(1)." Salazar v. Dretke, 419 F.3d 384, 399 (5th Cir. 2005).

Furthermore, a federal court is not to review a state court's determination of state law issues. Thompson v. Thaler, 432 F. App'x 376, 379 (5th Cir. 2011); McCarthy v. Thaler, 482 F. App'x 898, 903 (5th Cir. 2012). The Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005). "Under § 2254, federal habeas courts sit to review state court misapplications of federal law. A federal court lacks authority to rule that a state court incorrectly interpreted its own law." Charles v. Thaler, 629 F.3d 494, 500–01 (5th Cir. 2011) (emphasis original). Indeed, the Fifth Circuit has observed, "[i]t is not our function as a federal appellate court in a habeas proceeding to review a state's interpretation of its own law." Schaetzle v. Cockrell, 343 F.3d 440, 449 (5th Cir. 2003) (quoting Weeks v. Scott, 55 F.3d 1059, 1063 (5th Cir. 1995)).

**C. Timeliness**

A petitioner has a one year "period of limitation" in which to file a § 2254 petition. 28 U.S.C. § 2244(d)(1). That period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).  This one year period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review" is pending in the state courts. 28 U.S.C. § 2244(d)(2).

Further, the limitations period is not jurisdictional and may be equitably tolled. Holland v. Florida, 560 U.S. 631, 645 (2010).  For equitable tolling to excuse the late filing of a petition, the petitioner must show that he has been "pursuing his rights diligently" and that "some extraordinary circumstance" prevented timely filing. Id. at 649.

A petitioner may overcome the limitations period by a showing of actual innocence. McQuiggin v. Perkins, 133 S.Ct. 1924, 1928 (2013).  In order to prove actual innocence, the petitioner must persuade the Court that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id., (citing Schlup v. Delo, 513 U.S. 298, 329 (1995)).

**D. Exhaustion**

Finally, the Court may not consider the petition if the petitioner has not exhausted the remedies available in the state court. Scott v. Hubert, 635 F.3d 659, 667 (5th Cir. 2011) (citing 28 U.S.C. § 2254(b)(1)(A)).  This limitation applies because, under § 2254, the Court can only review a state court's decision and if the petitioner did not raise the issue in the state courts, then there is no decision to review. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002).

Generally, in order to be exhausted, the claim must have been presented to the state's highest court "in a procedurally proper manner according to the rules of the state courts." Mercadel v. Cain, 179 F.3d 271, 275 (5th Cir. 1999). To exhaust a particular claim, a petitioner "must have fairly presented the substance of his claim to the state courts." Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997). "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (quoting Anderson v. Harless, 459 U.S. 4, 6 (1982)). If a petitioner uses one set of operative facts to raise an argument in state court and then relies on those same facts to argue a different legal theory in federal court, the claim is still unexhausted. Wilder, 274 F.3d at 259 (citing Vela v. Estelle, 708 F.2d 954, 958 n. 5 (5th Cir. 1983)).

If a petitioner has unexhausted claims and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then the claims are considered to have been procedurally defaulted. Nobles, 127 F.3d at 420.

## III. Analysis

As observed earlier, Villarreal has raised four claims: (1) the State failed to turn over exculpatory and impeachment evidence in the form of Gonzalez's videotaped confessions; (2) denial of counsel of choice; (3) ineffective assistance of counsel; and (4) evidence was insufficient to sustain the convictions. Dkt. No. 1. The Court will first address the timeliness of the petition; then address whether equitable tolling is warranted; and, finally, consider whether the statute of limitations has been overcome by a showing of actual innocence.

### A. Timeliness

As previously noted, Villarreal had one year in which to file his § 2254 petition in this Court. As relevant here, that one year commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

On March 4, 2010, the Thirteenth District Court of Appeals affirmed Villarreal's conviction on direct appeal. Villarreal v. State, 2010 WL 746699 (Tex. App. 2010). On April 1, 2010, that same court overruled Villarreal's motion for rehearing. Id. Villarreal had 30 days – from the date of the denial of rehearing – to file a petition for discretionary review with the Texas Court of Criminal Appeals. TEX. R. APP. PROC. 68.2(a). Villarreal did not file such a petition. Dkt. No. 1, p. 3.

Because Villarreal did not file a petition for discretionary review, his conviction became final on May 3, 2010.[5] See Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003) (if a defendant does not file a petition for discretionary review, the conviction becomes final when the thirty-day period for filing the petition ends).

By the plain language of § 2244(d)(1)(A), Villarreal had until May 3, 2011, to file a habeas petition in federal court. Villarreal did not file his habeas petition in this Court until September 10, 2018, over seven years after the deadline for timely filing his petition. Dkt. No. 1. Indeed, Villarreal did not file his federal habeas petition until almost two years after the Texas courts rejected his second state habeas petition.

The one-year period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review" is pending in the state courts. 28 U.S.C. § 2244(d)(2). The existence of such tolling avails Villarreal nothing. Both of Villarreal's state habeas petitions were "filed . . . after the period of limitation had expired[,]" accordingly, they do not toll the limitations period. Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000) (emphasis original). Unless Villarreal can show that he is entitled to equitable tolling, his petition is untimely filed and should be dismissed.

---

[5] Normally, the conviction would have become final on May 1, 2010, which was 30 days after the petition for rehearing was overruled. That day, however, was a Saturday, so the conviction became final on Monday, May 3, 2010, which was the next business day. TEX. R. APP. PROC. 4.1.

## B. Equitable Tolling

Even if Villarreal's limitations period was not statutorily tolled, it may be equitably tolled. Holland, 530 U.S. at 645. To avail himself of such relief from the limitations period, Villarreal must establish "extraordinary circumstances" that warrant the tolling of the limitations period. Id at 649. Villarreal bears the burden of establishing that equitable tolling is appropriate. Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir. 2000). He has failed to meet this burden.

To merit equitable tolling, "[a] petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." In re Wilson, 442 F.3d 872, 875 (5th Cir. 2006). Villarreal has not identified any external limitations that prevented him from timely filing his habeas petition.

As a result, Villarreal has not met his burden and equitable tolling is inappropriate. The Court must consider, however, Villarreal's claim that he is actually innocent, obviating the statutory filing deadlines.

## C. Actual Innocence

Villarreal claims that because he is actually innocent of the robbery of Ultimo Taco, the statutory filing limitations do not preclude the instant petition. Once again, Villarreal has failed to meet the established burden to raise this claim.

As previously noted, a petitioner may overcome the limitations period by a showing of actual innocence. McQuiggin, 569 U.S. at 386. The actual innocence standard "is demanding and permits review only in the extraordinary case." House v. Bell, 547 U.S. 518, 538 (2006) (internal quotations omitted); see also Schlup v. Delo, 513 U.S. 298, 324 (1995) ("claims of actual innocence are rarely successful."). In order to establish actual innocence, the petitioner must "persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." McQuiggin, 569 U.S. at 386.

13

"To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S. at 324.   If the evidence was always within the defendant's personal knowledge or reasonable investigation, it is not considered to be new evidence for actual innocence purposes. Hancock v. Davis, 906 F.3d 387, 390 (5th Cir. 2018) (citing Moore v. Quarterman, 534 F.3d 454, 465 (5th Cir. 2008)).

Villarreal alleges that in the Ultimo Taco robbery, the State argued that the gold Dodge Stratus – that was used as the getaway car – was owned by Villarreal's mother, Maria Guadalupe Villarreal.  The Ultimo Taco robbery occurred on December 10, 2005. Dkt. No. 17-16, p. 9.  Villarreal alleges that his mother purchased the gold Dodge Stratus on July 30, 2007, showing that it could not have been the same getaway car. Dkt. No. 2, pp. 36-37.

Even if the Court assumes the truth of the allegation,[6] Villarreal argues that he discovered this evidence after his mother was murdered in 2010 and her belongings were sent to a relative. Dkt. No. 2, p. 14.  The relative, at Villarreal's request, sent him the paperwork showing that Villarreal's mother purchased the vehicle from an automotive dealer in Brownsville, Texas, on July 30, 2007. Id.

Notwithstanding Villarreal's argument, this evidence is not "new evidence" for actual innocence purposes.  The date that his mother purchased the vehicle would have been within Villarreal's "personal knowledge or reasonable investigation." Hancock, 906 F.3d at 390; Moore, 534 F.3d at 465.  There is no evidence in the record showing that Villarreal or his attorney would not have been able to ascertain the date of purchase of the vehicle after a reasonable investigation.  Indeed, Villarreal could have asked his mother when she purchased the vehicle and passed that information on to his attorney.  The fact that he and his lawyer did not actually discover this information until later does not make it new evidence. See

---

[6] There is some question as to the legibility of the document cited by Villarreal.  See Dkt. No. 16, n. 6.  For present purposes, the Court will assume the fact alleged.

Hancock, 906 F.3d at 390 (defendant must show that evidence was "unavailable to him or trial counsel at or before trial.").

Furthermore, Villarreal raised this issue in his second state habeas petition. Dkt. No. 17-26, pp. 1066-80.  The Texas Court of Criminal Appeals dismissed the petition as a subsequent petition. Dkt. No. 17-25, p. 1062.  Under Texas law, subsequent petitions are barred, unless they contain "claims and issues" that are being raised for the first time because the underlying "legal or factual basis" for the claims was unavailable. TEX. CODE CRIM. PROC. ART. 11.07, §4(a)-(c).  By dismissing the petition as a subsequent petition, the Texas court implicitly found that the evidence about the gold Dodge Stratus was not new evidence that was previously unavailable to Villarreal. See Ford v. Davis, 910 F.3d 232, 235 (5th Cir. 2018) (Because Texas law "bars subsequent applications for which the factual basis was previously available, the state court necessarily found that [the defendant] knew or could have reasonably known about" the evidence).  That implicit factual finding is subject to the presumption of correctness. Id.  Villarreal has produced no evidence which overcomes this presumption of correctness.

Lastly, even if the Court assumes that the evidence is newly discovered, it does not establish that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." McQuiggin, 569 U.S. at 386.  There is still considerable evidence that Villarreal committed the crime.  While the victims of the Ultimo Taco robbery were not able to positively identify Villarreal as one of the robbers, the manager described them as a tall robber and a much shorter robber, one with a pistol and the other with a rifle. Villarreal, 2010 WL 746699, at *1.  This is consistent with the description given by the witnesses at the Bed Bath & Beyond robbery. Id, at *2.

Further, Medders – a non-accomplice witness – testified that Villarreal and Gonzalez came over to her apartment at around the same date as the Ultimo Taco robbery, complaining "that they did not have enough money or did not get enough money." Id.  At trial, Gonzalez testified that "because he was on drugs, he could not 'remember real good'

15

who was with him at the Ultimo Taco restaurant on December 10, 2005, but both went into the restaurant, '[s]tuck up the place,' and drove off together." Villarreal, 2010 WL 746699, at *2. In a statement to police, given on December 21, 2005, Gonzalez implicated Villarreal in the Ultimo Taco robbery and that statement was admitted into evidence. Id.

Additionally, the fact that Villarreal's mother bought the gold Dodge Stratus after the robbery occurred does not foreclose Villarreal from having used a different gold Dodge Stratus in the commission of the offense. It merely forecloses the argument that he used his mother's vehicle.

While the foregoing evidence may be somewhat circumstantial, especially given that the victims of the Ultimo Taco robbery could not positively identify Villarreal as the shorter robber, a reasonable juror could still find Villarreal guilty of robbery. It is not enough for Villarreal to show that in light of the new evidence, reasonable doubt exists. Rather, he must establish that no reasonable juror would vote to find him guilty. Schlup, 513 U.S. at 329. Villarreal has not met the demanding standard to show actual innocence. Accordingly, Villarreal's petition is untimely filed and should be dismissed on those grounds.

Even if the Court reached the merits of Villarreal's claims, he fares no better. All of his claims – save his claim regarding choice of counsel – are unexhausted. The choice of counsel claim, even if exhausted, does not merit relief.

### D. Exhaustion

Villarreal makes several arguments in this Court that were not raised on direct appeal or in his first state habeas petition. Villarreal alleges that the State violated his Brady rights, by not turning over exculpatory and impeachment evidence, in the form of Gonzalez's videotaped confessions. Villarreal further asserts that he was (1) constructively denied counsel during the pretrial phase of the case; (2) denied effective assistance of counsel because retained counsel failed to subject the prosecution's case to meaningful adversarial testing; (3) counsel was ineffective for failing to present the exculpatory evidence regarding the gold Dodge Stratus; (4) counsel was ineffective for failing to seek suppression of illegally

obtained evidence; (5) counsel was ineffective for failing to move to have a witness's in-court identification of Villarreal excluded as unreliable; and (6) counsel was ineffective for failing to request a jury instruction for lesser-included offenses.  Villarreal further argues that there was insufficient evidence that he possessed a firearm during the Sally's robbery, which was an essential element of the offense.  All of these claims are unexhausted.

Villarreal did not raise these claims on direct appeal or in his first state <u>habeas</u> petition.  Rather, Villarreal raised these claims in his second state <u>habeas</u> petition, which was dismissed on procedural grounds. Dkt. No. 17-25, p. 1062.

To exhaust a particular claim, a petitioner "must have fairly presented the substance of his claim to the state courts." <u>Nobles v. Johnson</u>, 127 F.3d 409, 420 (5th Cir. 1997).  A petitioner must "present his claims before the state courts in a procedurally proper manner according to the rules of the state courts." <u>Mercadel v. Cain</u>, 179 F.3d 271, 275 (5th Cir. 1999).  When a claim is raised for the first time in a state <u>habeas</u> petition that is dismissed by the state court on procedural grounds, that claim has not been properly presented to the state court and is unexhausted. <u>Adams v. Thaler</u>, 421 F. App'x 322, 329 (5th Cir. 2011) (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30 (1991)).

In his first state <u>habeas</u> petition, Villarreal raised claims of ineffective assistance of counsel, but those claims related to counsel's failure to object to the introduction of hearsay evidence and to evidence of Villarreal's post-arrest silence. Dkt. No. 17-24, pp. 892-97. Similarly, Villarreal argued on direct appeal that the evidence was insufficient to sustain his conviction because there was a lack of non-accomplice testimony to convict him. <u>Villarreal</u>, 2010 WL 746699, at *5.  In the instant petition, Villarreal argues that counsel was ineffective by failing to: (1) subject the prosecution's case to meaningful adversarial testing; (2) present the exculpatory evidence regarding the gold Dodge Stratus; (3) seek suppression of illegally obtained evidence; (4) move to have a witness's in-court identification of Villarreal excluded as unreliable; and (5) request a jury instruction for lesser-included offenses.  Additionally, Villarreal presently argues that there is insufficient evidence that he possessed a firearm

17

during the Sally's robbery.  Thus, while both petitions raised claims of ineffective assistance of counsel, each petition posits very different theories as to how counsel was ineffective.

"The exhaustion requirement is not satisfied if the prisoner presents new legal theories or factual claims in his federal habeas petition." Nobles, 127 F.3d at 420.  Because Villarreal's theories and factual claims for ineffective assistance of counsel and sufficiency of the evidence were not raised on direct appeal or in his first state habeas petition, they are unexhausted. See Smith v. Quarterman, 515 F.3d 392, 402 (5th Cir. 2008) (ineffective assistance claims were unexhausted when the petitioner "changed the focus of his federal claim to substantive areas not previously raised in the state courts.").

Thus, the Court is "procedurally barred" from considering unexhausted claims. Nickleson v. Stephens, 803 F.3d 748, 753 (5th Cir. 2015).  Accordingly, the Court cannot consider any of these claims.

Furthermore, there is no basis for allowing Villarreal to return to state court to exhaust these claims.  "[W]hen a petitioner is procedurally barred from raising [his] claims in state court, his unexhausted claims are plainly meritless." Williams v. Thaler, 602 F.3d 291, 309 (5th Cir. 2010) (internal quotations omitted).

In fact, Villarreal would be procedurally barred from raising his claims in state court under Texas's abuse of the writ doctrine.  That doctrine "bars the state court from considering a successive habeas petition unless the petitioner meets certain prerequisites." Gutierrez v. Stephens, 590 F. App'x 371, 383-84 (5th Cir. 2014).  As relevant here, one of the prerequisites is that "the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application." TEX. CODE OF CRIM. PROC. § 11.07 § 4(a)(1)(emphasis added).  Villarreal has already attempted to raise these issues in a previous petition.  That petition was dismissed as an abuse of the writ.  Accordingly, the state courts would almost certainly consider a third state habeas petition to be a successive petition under the doctrine and, accordingly, dismiss.

The Fifth Circuit "has held that, since 1994, the Texas abuse of the writ doctrine has been consistently applied as a procedural bar, and that it is an independent and adequate state ground for the purpose of imposing a procedural bar." Hughes v. Quarterman, 530 F.3d 336, 342 (5th Cir. 2008). Thus, if Villarreal were permitted to return to state court to file the instant claims, they would be dismissed under the abuse of the writ doctrine. For this reason, as established by Williams, Villarreal's claims are plainly meritless as a procedural matter.

### E. Choice of Counsel

Villarreal asserts that he was denied his choice of counsel. This claim, while exhausted, entitles Villarreal to no relief.

Villarreal retained Everardo Garcia as his attorney. When jury selection began, Moises Salas appeared for Villarreal and also defended him at trial. Dkt. Nos. 17-14, 17-15, 17-16, 17-17. Garcia represented Villarreal during the punishment phase and sentencing. Dkt. Nos. 17-18, 17-19. As the Texas appellate court noted, "[t]here is no indication in the record as to why Garcia was not there or why Salas was there," for jury selection and trial. Villarreal, 2010 WL 746699, at *4. The Texas appellate court concluded that Villarreal waived any argument regarding choice of counsel because he did not object at trial. Id.

The failure to "contemporaneously object" is a procedural default which waives relief. Mann v. Scott, 41 F.3d 968, 982 (5th Cir. 1994). The state court's conclusion, that Villarreal's failure to object to Salas representing him waived the argument, was not contrary to clearly established federal law. Accordingly, this claim should be denied.

## IV. Recommendation

It is recommended that the motion for summary judgment filed by Respondent Lorie Davis be granted. Dkt. No. 14. It is further recommended that Jesus Roberto Villarreal's petition for writ of habeas corpus by a person in state custody pursuant to 28 U.S.C. § 2254 be dismissed as untimely filed or alternatively as partially unexhausted and meritless.

### A. Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a petitioner may not appeal the denial of a § 2254 motion to the Court of Appeals. 28 U.S.C. § 2253(c)(1)(A). A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To satisfy this standard, a petitioner must demonstrate that jurists of reason could disagree with the court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. Id. at 327; Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006). "Importantly, in determining this issue, we view the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." Druery v. Thaler, 647 F.3d 535, 538 (5th Cir. 2011) (internal quotations omitted) (citing Barrientes v. Johnson, 221 F.3d 741, 772 (5th Cir.2000)). The district court must rule upon a certificate of appealability when it "enters a final order adverse to the applicant." Rule 11, Rules Governing § 2254 Petitions.

After reviewing Villarreal's § 2254 motion and the applicable Fifth Circuit precedent, the Court is confident that no outstanding issue would be debatable among jurists of reason. Although Villarreal's § 2254 motion raises issues that the Court has carefully considered, he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Accordingly, it is **RECOMMENDED** that a COA should be denied.

### B. Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Fernando Rodriguez, Jr., United States District Judge. 28 U.S.C. § 636(b)(1). Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court, except upon grounds of

plain error or manifest injustice. <u>Alexander v. Verizon Wireless Servs., L.L.C.</u>, 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas, on January 25, 2019.

_____
Ronald G. Morgan
United States Magistrate Judge